# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* ) | Case No 24-951M(NJ). |
| Information and location of target cellular device ) | |
| assigned dialed numbers as follows: (262) 270-9882 ) | |
| (Target Device 1, service provider T-Mobile) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 1/3/2025_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.      xx☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable Nancy Joseph _____.
                                                            *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial) and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued 12/20/2024 @ 8:25 a.m.: _____

*Judge's signature*

City and state:     Milwaukee, WI     _____     Honorable Nancy Joseph, U.S. Magistrate Judge
                                                                      *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the following cellular devices:

- **(262) 270-9882 (Target Device 1)**, whose service provider is T-Mobile, a wireless telephone service provider headquartered in Parsippany, New Jersey.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: Target Device users is the person to whom the pen register or trap and trace device is to be attached/applied and who is the subject of the criminal investigation; (262) 270-9882 (Target Device 1, T-Mobile) is the phone number to which the device is to be attached; and Title U.S.C. § Statute  is the offense, or one of the offenses, to which information relates; and

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Bureau of Alcohol, Tobacco, Firearms and Explosives.

**ATTACHMENT B**

**Particular Things to Be Seized**
**with a Cell Site Simulator or Wi-Fi Geolocation Device**

This Warrant authorizes the officers to whom it is directed to determine the location of the target cellular device by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to signals sent to it by the officers;

for a period of thirty (30) days, during all times of day and night. This includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the Bureau of Alcohol, Tobacco, Firearms and Explosives. Because the use of the device, a Cell Site Simulator or Wi-Fi geolocation device, may fall within the definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

This warrant does not authorize the interception of any content (telephone, text message, or internet based). The investigative device may interrupt cellular service of phones or other

cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

Under this warrant, the cell site simulator / geolocation device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

The Court finds reasonable necessity for use of the techniques and collection of information described. *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2).

**ATTACHMENT B**

**Particular Things to Be Seized**

**from Device Service Provider**

1.      Information about the target cell phone and its location, later referred to collectively as location information, includes all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent), and real time cell site information for 30 days beginning from the date the warrant was issued.  This includes initiating a signal to determine the location of the target cell phone on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123-3124 by the service provider and the Bureau of Alcohol, Tobacco, Firearms and Explosives. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41.  The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

2.      All subscriber and extended subscriber information, handset identifiers, handset make and model, WI-FI MAC address, and account notes and memos pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

3.     Call detail records and data reports with cell site location information for voice, SMS, MMS, and data connections, originating and destination IP addresses, and per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent) for July 17, 2024 to PRESENT pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

4.     To the extent that the information described is within the possession, custody, or control of the service provider, the service provider is required to disclose all location information to the government and provide all technical assistance necessary to accomplish the collection of the location information unobtrusively and with as little interference as possible.

5.     This pen register / trap and trace device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

6.     The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or representative who gains access to the information in this warrant shall not disclose the existence of the warrant, order, or investigation to any third party unless ordered to do so by the Court. Additionally, the agency requests that all court orders and supporting documents, including the affidavit and search warrant, be sealed until further order by the Court.

7.     This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2).

2

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )      Case No 24-951M(NJ). |
| information and location of target cellular device assigned dialed numbers | ) |
| as follows: (262) 270-9882 (Target Device 1, service provider T-Mobile), | ) |
| | ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

    I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    ☑ evidence of a crime;

    ❑ contraband, fruits of crime, or other items illegally possessed;

    ❑ property designed for use, intended for use, or used in committing a crime;

    ❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 924(c) | use of a firearm during the commission of a violent crime |
| 18 U.S.C. § 922(g)(1) | prohibited person in possession of a firearm |
| 21 U.S.C. § 841(a) | Distribution of Controlled substances |

The application is based on these facts:

Please see Affidavit.

    ☑ Continued on the attached sheet.

    ❑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

FRANK RUTTER    Digitally signed by FRANK RUTTER
Date: 2024.12.18 13:03:43 -06'00'

*Applicant's signature*

Frank Rutter, Special Agent - ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date 12/20/2024: _____

*Judge's signature*

City and state:   Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Frank Rutter, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND

1.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c) to authorize law enforcement to employ electronic investigative techniques, as described in the following attachment, to determine the location of the target cellular device assigned the dialed number as follows:

   a.  **(262) 270-9882 (Target Device 1)**, whose service provider is T-Mobile, a wireless telephone service provider headquartered in Parsippany, New Jersey.

2.  The Target Device is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

3.  This affidavit is made in support of up to two different search warrants to locate the phone: 1) by obtaining information from the service provider, e.g., cell site and other precision location information and/or 2) by utilizing a device that acts as a cell phone tower sometimes referred to as a Cell Site Simulator or Wi-Fi geolocation device. In addition, because this request may be construed as a Pen Register / Trap and Trace device or request, the application for this warrant (which includes this affidavit) is intended to comply with 18 U.S.C. § 3122.

4. I am employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since 2015. As an ATF Agent, I have participated in the investigation of firearms-related offenses, including violent crimes such as armed carjackings and robberies, and narcotics-related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, and weapons. As a firearms investigator, I have interviewed many individuals involved in firearm-related offenses and drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of firearms and controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by violators of firearms law and traffickers and abusers of controlled substances.

5. I have experience in the investigation, apprehension and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

6. I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy. That training included various legal courses related to constitutional law as well as search and seizure authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection

7. The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8.     There is reason to believe the target cellular devices are currently located in this district.  The users are known to spend most of their time in the Eastern District of Wisconsin.

9.     The Court has jurisdiction to issue the proposed warrants because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offenses being investigated; see 18 U.S.C. § 2711(3)(A)(i).

10.     Because these warrants seek the prospective collection of information, including cell-site location information, that may fall with the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. See 18 U.S.C. §§ 3121-3127. The requested warrants therefore include all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1).

11.     Based on the facts set forth in this affidavit, there is probable cause to believe the below described individuals are using the Target Cellular Devices.  I know from training and experience that cell phone users normally have their cell telephones with them, so locating a user's cell phone will show that user's location. I believe that locating the Target Cellular Device will constitute and lead to evidence of federal offenses, namely Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c)(use of a firearm during the commission of a violent crime),

Title 18 U.S.C. § 922(g)(1) (prohibited person in possession of a firearm) and Title 18 U.S.C. § 1951 (Hobbs Act Robbery), and Title 21 U.S.C. § 841(a) (distribution of controlled substances).

**PROBABLE CAUSE**

### August 17, 2024 - Carjacking (Location 1)

12.     Affiant has reviewed Milwaukee Police Department (MPD) reports associated with MPD IR C2408170037 which were related to a carjacking investigation.  Those reports document how on August 17, 2024, MPD responded to an armed carjacking which occurred at 2609 N. Fratney Street, Milwaukee, Wisconsin (Location 1).  Those reports reflect that when officers arrived, they spoke with victim, M.P. who stated he/she was working as an Uber driver when he/she had been carjacked by two unknown black males.

13.     Those reports reflect that M.P. was interviewed by Detective Carloni, who reported M.P. made the following statements: M.P. explained they had been an Uber driver for approximately six years and identified their vehicle as a 2020 Black, Dodge Durango SUV with Wisconsin license plate 700XRF (VIN: 1C4SDJCTXLC262104).  M.P. related they had accepted an Uber ride request at approximately 5:15 AM (CST) on August 17, 2024, with a pickup location of 2630 N. Fratney Street in Milwaukee, Wisconsin.  M.P. explained while traveling to pick up the Uber customer they were stopped at a redlight traveling East at the intersection of E. Center Street and N. Holton Street in Milwaukee, Wisconsin.  At this intersection, M.P. explained they observed a black four door sedan with heavy window tints stopped at the same traffic light facing South. When M.P. received the green light to proceed East through the intersection, M.P. observed the aforementioned black sedan disregard the red traffic light, make a left turn to follow M.P. East on E. Center Street.  M.P. stated they turned South on N. Fratney Street and pulled over in front

of 2609 N. Fratney Street to pick up the Uber customer. At this time, M.P. explained the black sedan slowly drove by before turning West onto E. Clarke Street. M.P. recalled a "short time" later someone (Suspect 1) approached his/her vehicle after coming from the Northwest corner of N. Fratney Street and E. Clarke. M.P. stated Suspect 1 approached his/her vehicle with a silver handgun pointed at him/her. M.P. explained Suspect 1 knocked on the vehicle window with the handgun and demanded the victim exit the vehicle and give up the vehicle keys. M.P. explained he/she complied with the request and began walking North on N. Fratney Street away from his/her vehicle. M.P. recalled hearing Suspect 1 yell for Suspect 2 to get in the vehicle. M.P. stated they observed Suspect 2 come from the West alleyway on N. Fratney Street and enter the passenger seat of M.P.'s vehicle. Suspect 1 entered the driver's seat and the vehicle fled South on N. Fratney Street before turning and going West on E. Clarke Street.

14. Detective Carloni further reported that M.P. described Suspect 1 as a black male, approximately 20 years old, 5'7" to 5'8", thin build with a short afro and a dark complexion. M.P. stated Suspect 1 was wearing a black sweatshirt with the hood cinched around their face and was armed with a silver handgun.

15. M.P explained his/her black iPhone 12 with a black and red Air Jordan case was taken in addition to other items along with the vehicle. I am aware Uber drivers utilize a cellular device to accept ride requests and must use those same devices for in-car information during the ride such as the suggested route of travel. These devices are often mounted and displayed in a manner that the passengers can view the information and the driver can receive information handsfree. It is likely the device reported stolen by M.P. is also the device he/she utilized to conduct their Uber business.

16.     Detective Carloni reported that M.P. described Suspect 2 as a black male but could not provide any further detail.

17.     Detective Bongel was assigned video-surveillance follow up and reported he recovered video surveillance footage from nearby store, Riverwest Co-Op located at 733 E. Clarke Street. SA Rutter obtained a copy of these recordings and reviewed them which depicted the following: the victim's vehicle can be observed traveling South on N. Fratney Street before pulling alongside the West curb and facing South.  Review of the surveillance cameras revealed the suspect's vehicle, a dark four door sedan passed the victim's vehicle traveling South on N. Fratney Street where it then turned West onto E. Clarke Street.  The suspect vehicle could be seen stopping in front of 726 E. Clarke Street where two suspects (both passengers) exited the vehicle and began walking towards and then North on N. Fratney Street towards the victim's vehicle.  The suspect vehicle can be further described as a black, four door sedan with window tints.  The vehicle appeared to have dark wheels and a license plate affixed to the front and rear bumpers.  Below is a picture of the suspect vehicle taken from the surveillance footage.



18.     That video further shows both suspects to be wearing dark clothing.  The two suspects can be seen on video approaching the victim's vehicle before committing the carjacking.  Suspect 1 approached the driver's side of the vehicle and could be seen raising their arm towards the vehicle as they neared.  It should be noted the victim previously related to Detective Carloni that Suspect 1 pointed a firearm at them while approaching.  Suspect 2 approached the passenger side of the vehicle.  After depriving the victim of their property, Suspect 2 could be seen fleeing on foot back to the suspect vehicle and Suspect 1 drove the victim's vehicle South on N. Fratney Street and then West on E. Clarke Street where it passed the suspect vehicle.  Both vehicles traveled West on E. Clarke Street to flee the area.

## August 17, 2024 – Fleeing/Eluding (Location 2 and 3)

19.     Affiant further reviewed MPD reports associated with MPD IR C2408170036 which were related to a fleeing/eluding offense from that same date involving the victim's vehicle after the carjacking. Those reports reflect that MPD Squad 5340 was dispatched to assist with the aforementioned carjacking incident.  Officer Roembke reported that while traveling to the site of the carjacking with his partner Officer Gregory, they observed the black Dodge Durango headed West on W Center Street at the intersection of N. 27th Street in Milwaukee. The driver of the Dodge Durango immediately started accelerating at a high rate of speed headed west from N. 27th Street (Location 2).  MPD officers activated their emergency lights and siren to affect a traffic stop, but the driver refused to stop while accelerating to even higher speeds. The vehicle pursuit continued for 1.9 miles as the driver disregarded red traffic lights and stop signs. MPD lost sight of the Dodge Durango on N. Appleton Avenue and W. Center Street in Milwaukee, Wisconsin (Location 3). The vehicle's speed reportedly reached over 90 miles an hour and included driving on the wrong side of the road.

**August 17, 2024 – FLOCK hit (Location 4)**

20.    On August 17, 2024, at approximately 10:41 AM (CST), the victim's vehicle was recorded by an automated license plate reader traveling North on N. 91st Street through W. Silver Spring Drive in Milwaukee, Wisconsin (Location 4). SA Rutter learned this information through a license plate query in the FLOCK system.



**August 18, 2024 – Vehicle Recovery**

21.    On August 18, 2024, MPD responded to the area of 5722 N. 84th Street in Milwaukee, Wisconsin after receiving information that the Dodge Durango was pinging there. This information was documented in a report written by Officer Leidy under MPD IR C2408170037. The report stated upon arrival, Officer Leidy and Officer Rummel located the victim's vehicle parked directly across from 5722 N. 84th Street. The vehicle was observed to have a red dealership placard on the rear bumper and the white stripes on the hood had been removed. Officers conducted surveillance of the vehicle and observed an unknown black male subject wearing a black zip-up hooded sweatshirt and black jogging pants with a blue stripe down the

exterior of both legs exit the south door of 8500 W. Fond du Lac Avenue. Officers observed the unknown black male approach the vehicle where the subject appeared to take a photo of the vehicle. The subject then re-entered into the building. Officers continued to monitor the vehicle but ultimately decided to approach and recover the vehicle. The vehicle was recovered and towed as evidence without incident. Below is an image depicting the proximity of 5722 N. 84th Street and 8500 W. Fond du Lac Avenue.



**Vehicle Processing**

22.     On August 19, 2024, Detective Barker responded to MPD's tow lot to process the recovered vehicle with Forensic Investigator Roeglin. Detective Barker's report detailed several items of evidentiary value were recovered from the vehicle including, but not limited to, an iPhone with an unknown model, unknown serial number, contained on Milwaukee Police Department Inventory No. 24023778, Item 1. Photographs of the recovered device showed it to be blue and without a protective case. It should be noted the victim previously described their personal device as a black iPhone housed within a red and black Air Jordan branded protective case. Investigator

Roeglin also obtained 7 DNA swabs and 12 latent print lifts. Those prints were compared to a database of known fingerprints and that analysis identified two such latent prints (from the driver's door window and the rear driver's side door) as that of Michael A. Johnson (DOB: XX/XX/2005).

**Michael A. Johnson**

23.     A review of Wisconsin Circuit Court records revealed Michael Johnson received an adult felony conviction under Milwaukee County Case 2021CF000045 for violating Wisconsin statute 940.20(1) – Battery by Prisoners. This conviction prohibits Michael Johnson from legally possessing firearms.

24.     Additionally, Michael Johnson has numerous juvenile felony convictions:

- 2022JV000327 – Armed Robbery, 943.32(2)
- 2020JV000529 – Robbery with Use of Force (943.32(1)(a)), Drive or Operate Vehicle w/o Consent (943.23(3))
- 2019JV000362 – Drive or Operate Vehicle w/o Consent (943.23(3))
- 2018JV000716A – Operate Vehicle w/o Consent-Passenger (943.23(4m))
- 2018JV000716 – Robbery with Use of Force (943.32(1)(a)), Operate Vehicle w/o Consent-Passenger (943.23(4m))

25.     Your affiant is aware on August 26, 2024, Detective Carloni showed a photo array to the victim which included a photograph of Michael Johnson. This event is memorialized in report associated with MPD IR C2408170037. Additionally, it should be noted the victim did not identify anyone in the photo array. Your affiant is aware one of the suspect's was previously described as having their hood up and cinched around their face during the carjacking. This manner of facial obstruction could have limited the victim's ability to get a strong look at the suspect's face during the crime.

**Concerning Uber Technologies**

26.     On October 11, 2024, the Honorable William Duffin, U.S. Magistrate Judge in the Eastern District of Wisconsin signed a federal search warrant for records from Uber Technologies.  Those records revealed that Michael Johnson did not order the rideshare request on the morning of the carjacking incident and the ride request was ultimately canceled by the requester who subsequently re-booked.  This sequence is consistent with an uninvolved party who was seeking a legitimate ride.

**(262) 270-9882 (Target Device 1) and Michael Johnson**

27.     On September 18, 2024, Special Agent Carlson spoke to Wisconsin Probation and Parole Agent (PPA) Emily Nannetti (ID no. 30801) who stated the address on file for Michael Johnson was 2903 W. Clarke Street, Milwaukee, WI.  PPA Nannetti provided the cellular phone number **(262) 270-9882 (Target Device 1)** for Michael Johnson and stated the last telephonic contact with Michael Johnson at this number occurred on June 12, 2024.

28.     A search of public record aggregating databases commonly utilized by law enforcement revealed telephone number **(262) 270-9882 (Target Device 1)** is associated with Michael Johnson and "Tito A. Johnson Jr." at the address of 8500 W. Fond du Lac Avenue, Milwaukee, WI.  The associated date of birth for Tito Johnson matched that of Michael Johnson leading investigators to believe it could be an alias used by Michael Johnson.

   a.  It should be noted, the victim's Dodge Durango was recovered in close proximity to 8500 W. Fond du Lac Avenue and an unknown black male exited that address before interacting with the victim's vehicle shortly before the vehicle's recovery by Milwaukee Police Department.  See previous paragraph detailing the recovery of the victim's vehicle on August 18, 2024.

29.     Michael Johnson is currently on probation with the State of Wisconsin, and he is actively absconding.  Wisconsin Probation and Parole issued a warrant for revocation on June 17, 2024 after he failed to attend a home meeting.  That warrant is still valid.

30.     The address on file with Wisconsin PPA is "2903 W. Clarke Street, Milwaukee, Wisconsin."  Your affiant is aware that 2903 W. Clarke Street does not exist as an address, but that Milwaukee Police Department records have associated Michael Johnson with 2703 W. Clarke Street in Milwaukee, Wisconsin.

31.     T-Mobile subscriber records, obtained via Federal Grand Jury subpoena, for the cellular phone number **(262) 270-9882 (Target Device 1)** revealed the number is registered to "Katrina Gordon" at 4468 N. 76th Street, Milwaukee, Wisconsin. Your affiant has previously identified Katrina Gordon as the mother of Michael Johnson, through State of Wisconsin Juvenile felony conviction records reviewed by investigators.  Additionally, utilities search for 2703 W. Clarke Street, Milwaukee, WI revealed that "Katrina Gordon" has been the utilities holder at 2703 W. Clarke Street since June 1, 2024.

32.     Your affiant is aware Michael Johnson has also made a Facebook post attributing himself to **(262) 270-9882 (Target Device 1).**  Special Agent Carlson previously reviewed a publicly visible Facebook page with vanity name "HawkEm Down Mike" and found the page to likely be owned and controlled by Michael Johnson.  Special Agent Carlson observed a Facebook post, dated, December 23, 2023, where Michael Johnson made a post captioned "Christmas (tree emoji) Deals 20 40 60 (fire emoji) 2622709882 (phone emoji)".  Your affiant is aware through training and experience that the terms "20 40 60" are commonly associated with narcotics sales, and the fire emoji is often used to denote product of superior quality.



**(262) 270-9882 (Target Device 1) Toll Analysis**

33.     On September 18, 2024, Special Agent Carlson spoke to Probation and Parole

Agent (PPA) Kyle Courtier (ID no. 93102) who provided the address of record for Travis D.

Williams (DOB: XX/XX/2005) as 8500 W. Fond du Lac Avenue, Apartment 28 in Milwaukee,

Wisconsin.  PPA Courtier provided Travis Williams' contact number as 414-737-3810

("Williams Number").  Special Agent Carlson learned that PPA Courtier knows Travis Williams

and Michael Johnson to be associates.  PPA Courtier explained he has seen Travis Williams and

Michael Johnson together on multiple occasions at 8500 W. Fond du Lac Avenue while

conducting probation visits with Travis Williams.  PPA Courtier also stated Travis Williams

previously asked if Michael Johnson could reside with him at 8500 W. Fond du Lac Avenue,

Apartment 28 in June 2024 when initially providing his residency information to Wisconsin

Probation and Parole.  PPA Courtier denied that request due to Michael Johnson also being on

active community supervision.

34.     A review of Wisconsin Circuit Court records revealed Travis Williams received

an adult felony conviction under Milwaukee County Case 2023CF001243 for violating

Wisconsin statute 941.29(1m)(bm) – Possess Firearm-Adjudicated Delinquent of a Felony.  This

conviction prohibits Travis Williams from legally possessing firearms.  Travis Williams remains

on GPS monitoring and under the supervision of PPA Courtier as a result of this conviction. PPA Courtier reviewed GPS data for Travis Williams during the carjacking incident and explained Travis Williams was not in proximity to the carjacking scene at the time of the incident.

35.     Additionally, Travis Williams has numerous juvenile felony convictions:

- 2021JV001205 – 2nd Degree RES (941.30(2)), Drive or Operate Vehicle w/o Consent (943.23(3))

- 2021JV000674 – Mayhem (940.21), 1st Degree Reckless Injury (940.23(1)(a))

- 2020JV000533 – Operate Vehicle w/o Consent-Passenger (943.23(4m))

36.     Special Agent Rutter reviewed toll records for **(262) 270-9882 (Target Device 1)** and observed a 33 second telephone conversation occurring between **(262) 270-9882 (Target Device 1)** and the Williams Number on August 17, 2024 at approximately 0127 hours.

   a.   Your affiant is aware the carjacking occurred between approximately 0515 and 0530 hours on August 17, 2024.

37.     Special Agent Rutter reviewed T-Mobile cellular records which were obtained via Federal Grand Jury subpoena and observed the following communications between **(262) 270-9882 (Target Device 1)** and the Williams Number on August 18, 2024, the date of the carjacking vehicle's recovery.

- At 1457 hours, **(262) 270-9882 (Target Device 1)** calls the Williams Number and the conversation lasts approximately 34 seconds.

- At 1509 hours, **(262) 270-9882 (Target Device 1)** calls the Williams Number and the conversation lasts approximately 41 seconds.

- At 1510 hours, **(262) 270-9882 (Target Device 1)** calls the Williams Number and the conversation lasts approximately 17 seconds.

- At 1538 hours, the Williams Number calls **(262) 270-9882 (Target Device 1)** and the call lasts approximately 4 seconds.

- At 1540 hours, the Williams Number calls **(262) 270-9882 (Target Device 1)** and the conversation lasts approximately 4 seconds.

- Your affiant is aware through review of the MPD carjacking incident reports that at 1551 hours, MPD had recovered the victim's vehicle after conducting surveillance and observing a black male exit 8500 W. Fond du Lac Avenue and take photographs of the vehicle. See previous paragraph for more information regarding circumstances surrounding the vehicle's recovery.

38.     On November 5, 2024, Special Agent Carlson spoke with PPO Courtier and learned Travis Williams was not present at 8500 W. Fond du Lac Avenue during the aforementioned telephone contacts with Michael Johnson. PPO Courtier reviewed Travis Williams' historical GPS data which placed Travis Williams elsewhere in Milwaukee during the aforementioned telephonic contacts with Michael Johnson. It should be noted during this same time period, Milwaukee Police Officers observed a black male exit the aforementioned address to photograph the victim's vehicle. See earlier paragraph documenting the recovery of the victim's vehicle.

39.     On October 18, 2024, at 1216 hours, the Williams Number placed a telephone call to **(262) 270-9882 (Target Device 1)** which lasted approximately 263 seconds.

40. Your affiant is aware based on conversations with PPO Courtier that Travis Williams is currently undergoing a revocation process related to his current probation status. On October 18, 2024 Travis Williams was taken into law enforcement custody related to an outstanding probation violation. Affiant reviewed recorded Milwaukee County jail call records which reflect that on October 19, 2024, at 0749 hours, Travis Williams, using inmate ID 709061, attempted to place a recorded jail telephone call to **(262) 270-9882 (Target Device 1)**. The call resulted in 0 seconds of talk time. Travis Williams attempted a second call to **(262) 270-9882 (Target Device 1)** the same day at 1406 hours which also resulted in 0 seconds of talk time.

41. Based on the foregoing, affiant believes **Target Device 1** is a phone number which is in regular use by Michael Johnson. Affiant knows that Johnson utilized that phone number to advertise narcotics trafficking in late 2023, and that toll records show that phone number's ongoing communications with Johnson's known associates through much of 2024.

**Timing Advance Area Searches and Tower Dumps**

42. On September 23, 2024, the Honorable Nancy Joseph, U.S. Magistrate Judge in the Eastern District of Wisconsin singed a federal search warrant which authorized the cellular area searches and the collection of timing advance data in relation to the offenses listed above. This warrant returned thousands of lines of cellular data and information which was then analyzed to isolate only those identifiers whose records were consistent with the facts of the investigation, including being in the geographic area of more than one location. As a summary, the following locations were included in the warrant:

   a.  Location 1 – 2609 N. Fratney Street, Milwaukee, Wisconsin on August 17, 2024

   b.  Location 2 – Intersection of W. Center Street and N. 27th Street in Milwaukee on August 17, 2024

c. Location 3 – Intersection of W. Center Street and N. Appleton Avenue in Milwaukee on August 17, 2024

d. Location 4 – Intersection of North on N. 91st Street and W. Silver Spring Drive in Milwaukee on August 17, 2024

**Analysis of Timing Advance Area Search Data**

43. The information was analyzed by the Federal Bureau of Investigation (FBI) Cellular Analysis Survey Team (CAST) who provided information to investigators and summarized the information below as the initial identification of 414-554-3146 and 414-368-7042. Your affiant is aware **(262) 270-9882 (Target Device 1)** did not show up in the Timing Advance analysis as being present at any of the aforementioned locations during their respective timeframes.

**December 5, 2024 – Surveillance of Target Device 1**

71. On December 5, 2024, SA Carlson and SA Rutter conducted surveillance of **(262) 270-9882** (**Target Device 1**). All times listed are approximate.

72. At 08:21 AM, SA Carlson and SA Rutter arrived in the area of 2703 W. Clarke Street and immediately observed a black Ford Fusion sedan (bearing Wisconsin license plate no. AWL7354), occupied by only one unknown black male driver, driving northbound on N. 28th Street past W. Clarke Street. At 08:22 AM CST, the ping for **(262) 270-9882** (**Target Device 1**) indicated the device was located within a few blocks of N. 28th Street and W. Clarke Street, where agents previously observed the black Ford Fusion Sedan driving.

73. At 08:32 AM, the ping for **(262) 270-9882** (**Target Device 1**) indicated the device was traveling North. In anticipation, agents responded to 4207 N. 46th Street in

Milwaukee which was an address identified by SA Reinerth as a possible address associated with **(262) 270-9882** (**Target Device 1**) based on analysis of the historical location information for **(262) 270-9882** (**Target Device 1**).

74.     Upon arrival, SA Carlson and SA Rutter observed the same Ford Fusion sedan (bearing Wisconsin license plate no. AWL7354) parked directly in front of 4207 N. 46th Street.  SA Rutter observed an unknown black male exit the black Fusion and enter the unit marked 4207 N. 46th Street.  From the agents' vantage point, they were unable to positively ID the driver, as only his backside was visible.

75.     At 09:02 AM CST, the ping for **(262) 270-9882** (**Target Device 1**), was in the area of 4207 N. 46th Street.

**December 9, 2024 – Surveillance of Target Device 1**

76.     On December 9, 2024, at 08:15 AM CST, SA Carlson analyzed location data collected for **(262) 270-9882** (**Target Device 1**) and observed the device was pinging in the area of W. National Avenue and S. 16th Street between approximately 04:00 AM CST and 06:02 AM CST.  After the 06:02 AM CST, the device was off and no location data was collected.

　　a.  At 08:30 AM CST, SA Carlson and SA Rutter arrived in the area of W. National Avenue and S. 16th Street and began to look for a black Ford Fusion sedan (bearing Wisconsin license plate no. AWL7354).  This vehicle was previously associated with the possessor of **(262) 270-9882** (**Target Device 1**) on December 5, 2024 during surveillance conducted by SA Carlson and SA Rutter**.**

b. At 08:48 hours, SA Carlson and SA Rutter located the aforementioned black Ford Fusion parked in front of 723 S. 22nd Street, Milwaukee, WI. At this time, the phone remained off and no pings were collected.

c. At 09:20 AM CST agents observed an unknown black male, wearing a black hooded sweatshirt and black Adidas sweatpants, exit the south door of unit 729 S. 22nd Street, and walk to and enter the driver's seat of the aforementioned Black Ford Fusion. He remained in the car for a brief moment then repeatedly went back and forth between the aforementioned residence and the vehicle. See the photographs below which depict the unknown subject, who does not appear to match the physical attributes of Michael Johnson.





d. Agents remained in the area of 729 S. 22nd Street until approximately 10:00 am and no more movement was observed. **(262) 270-9882** (**Target Device 1**) remained off for this period and no location data was collected.

e. At 11:30 AM CST, agents drove by 729 S. 22nd Street and observed that the aforementioned Ford Fusion sedan was no longer parked on the block. **(262) 270-9882** (**Target Device 1**) was off at this point and no location data was collected at this time.

77. On the same date, at 12:42 PM CST, **(262) 270-9882** (**Target Device 1**) was turned back on and pinging in the area of 2703 W. Clarke Street, the address associated with Johnson.

78. At 01:00 PM CST, SA Carlson and SA Rutter arrived in the area of 2703 W. Clarke Street, where **(262) 270-9882** (**Target Device 1**) was currently pinging. Agents observed no vehicles parked near the property and did not observe the aforementioned black Ford Fusion.

79. The location data for **(262) 270-9882** (**Target Device 1**) remained stationary and did not move from the area of 2703 W. Clarke Street while agents were conducting surveillance.

80. At approximately 2:02 PM CST, SA Carlson and SA Rutter observed a navy blue Mazda sedan (bearing Wisconsin license plate no. ACW6050) turn onto W. Clarke Street from N. 27th Street, and park in front of 2703 W. Clarke Street. Moments later, SA Carlson and SA Rutter observed a black male, whose height, weight, and hairstyle appeared to be consistent in appearance with Michael Johnson, exit through the north door on the east side of 2703 W. Clarke Street and jog up to the parked Mazda sedan. The unknown male approached the vehicle, opened the front passenger door of the vehicle, and leaned inside the vehicle. Agents tried to drive by the vehicle to make a positive identification but could not see the subjects' faces as they passed the vehicle. Agents drove around the block to regain visibility, but the vehicle and the unknown subject were no longer visible.

81. Agents remained in the area until approximately 03:00 PM CST and did not observe any more movement from the residence. Location data collected for **(262) 270-9882** (**Target Device 1**), showed the device remained in the area of 2703 W. Clarke Street until 11:32 PM CST when the device moved to the area of N. 53rd Street and W. Congress Street.

**Brad Ihrcke**

82.     A search of Wisconsin DMV records revealed the Mazda Sedan (bearing Wisconsin license plate no. ACW6050) can be more particularly described as a 2017 Mazda 6 Grand Touring sedan (VIN no. JM1GLIW57H1133164) which is registered to a Brad C. Ihrcke (DOB XX/XX/1987) at 264A W. Sumner Street, Hartford, WI.

83.     Toll analysis for **(262) 270-9882** (**Target Device 1**) indicated on December 9, 2024, at 01:47 PM CST the device had a 42 second call with (262) 339-8795, and another 11 second call at 02:02 PM CST.  A search of common law enforcement databases attributed (262) 339-8795 to Ihrcke.

84.     A search of Ihrcke's criminal history revealed a Misdemeanor Conviction for possession of Amphetamine/LSD/Psilocin in Washington County, Wisconsin under 2005CF000042.  Ihrcke was also arrested in 2005 for possession with the intent to distribute THC (greater than 200 grams).  Additionally, Ihrcke has a 2010 Wisconsin non-criminal conviction for possession of drug paraphernalia.

85.     On December 12, 2024, agents learned Ihrcke was arrested by Germantown Police Department for possession of approximately .49 grams of a rock-like substance (packaging included) which later tested positive for Cocaine.  This arrest occurred on December 10, 2024. Agents reviewed Germantown Police Officer Kaminski's report associated with the event which was filed under Germantown Incident 24-022072.  Officer Kamisnki's report documented Ihrcke's phone number as (262) 339-8795 and his address as 264A W. Sumner Street, Hartford, WI.  During a mirandized statement, Ihrcke stated he smokes crack cocaine approximately 3 times per week and uses about 0.5 grams each time.  Ihrcke explained he

purchased 1-1.5 grams during each purchase and has been using for several months.  Ihrcke would not identify the source of the narcotics.

86.     SA Reinerth provided agents with records of communication occurring between **(262) 270-9882** (**Target Device 1**) and (262) 339-8795  which is the known number for Ihrcke. Analysis of call records associated with **(262) 270-9882** (**Target Device 1**) revealed 83 records of communication between **(262) 270-9882** (**Target Device 1**) and Ihrcke between November 15, 2024 and December 12, 2024.  It should be noted the most recent series of communication occurred on December 11, 2024 which was the day following Ihrcke's aforementioned arrest by Germantown Police Department.

**Review of Facebook information for Michael Johnson**

87.     On November 6, 2024 the Honorable Stephen Dries, U.S. Magistrate Judge for the Eastern District of Wisconsin signed a federal search warrant authorizing the collection of data associated with a Facebook account belonging to Michael Johnson.  This account had user ID 61554397554408  and displayed vanity name "HawkEm Down Mike."  During a review of the data obtained with the search warrant, agents located numerous photographs of vehicles with obscured license plates, firearms and narcotics activity.  Below are some brief excerpts from the return.

88.     On November 1, 2024, at 08:33 AM UTC, Michael Johnson sent a private message to Facebook user 100084395536880 who displayed vanity name "Aun Ah" explaining, "I'm Outhere With Za Too."  Your affiant is aware the term "Za" is a commonly used slang term for marijuana.

89.     On the same date, at 10:03 AM UTC, Michael Johnson sent a photograph of himself to "Aun Ah." User "Aun Ah" responded, "Boy of the weed." Michael Johnson apologized and subsequently sent a video depicting a green leafy substance. User "Aun Ah" arranged to meet and they discussed "1st and Keefe." Your affiant is aware the intersection of N. 1st Street and W. Keefe Avenue is in Milwaukee, Wisconsin. User "Aun Ah" asked Michael Johnson for his telephone number and Michael Johnson provided his telephone number as **(262) 270-9882** (**Target Device 1**). Michael Johnson went on to state, "I'm Right Here By Keefe."



90.     Your affiant observed the residential numbers in the background to be 4211 and 4209. Your affiant also observed the structure to be consistent in appearance with the aforementioned address 4207 N. 46th Street in Milwaukee with which **(262) 270-9882** (**Target Device 1**) has previously been associated. Below is a screenshot from Google showing 4207 N. 46th Street and its location in relation to neighboring units 4209 and 4211. It should be noted the Google image showed civilians (2 adults and 1 child) with only their faces blurred. SA Rutter

added additional redactions to completely obscure them from this affidavit. The residence numbers 4211, 4209 and 4207 are circled in red.



91.     On October 17, 2024, Michael Johnson sent a private message to Facebook user 100047981423256 who displayed vanity name "Neighbor Hood Debo." In the message Michael Johnson asked, "Find Me A Trade For This Ghost Dezzy." "Neighbor Hood Debo" responded by asking what type it was and Michael Johnson sent the below image of a firearm.



92.     Your affiant is aware the term "ghost gun" is commonly used to describe a
unserialized and untraceable firearm.  Michael Johnson and "Neighbor Hood Debo" agreed to a
purchase price of $550.  It should be noted Michael Johnson previously provided his telephone
number as **(262) 270-9882** (**Target Device 1**) in a message to "Neighbor Hood Debo" on
September 7, 2024.

**Unsuccessful Identification of the Possessors of Target Device 1**

93.     Your affiant is aware through training and experience that active narcotics phones
are often shared between multiple users throughout the day to meet a more robust demand

schedule outside the normal waking hours of any one individual. This leads to increased sale volume and thus increased profits.

94.    Your affiant is aware through training and experience that location data collected for cellular devices can vary substantially per device, cellular network, and there are other external factors that affect cellular signal quality. To date, the majority of the location data collected for **Target Device 1** has contained cellular pings that had a large radius in which the device could be located.  The suspected possessor of **Target Device 1**, Michael Johnson, is currently absconding from law enforcement and his residence and/or known vehicles largely remain unknown to law enforcement.  The large ping radiuses collected for **Target Device 1** continue to make locating **Target Device 1** difficult with traditional surveillance techniques.

95.    To date, agents have had limited access to the mobile cell site simulator equipment necessary to reduce the radius of the location data collected and assist agents in more precisely attributing ownership of the target devices.  For this reason, further surveillance as authorized by this warrant application will allow agents more time to identify the possessors of the target devices and identify residences where evidence is likely to be located.

96.    Information obtained from this search warrant will be used to attempt to locate Target Device users within the next 30 days.

## AUTHORIZATION REQUEST & MANNER OF EXECUTION

97.    I request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) and 2711.

98.     Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this application and the accompanying warrant are intended to comply with requirements set forth in 18 U.S.C. §§ 3122-3123.

99.     In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

100.    In my training and experience, I have learned that Select Provider is a company with its headquarters located within the United States and provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of cellular devices to which they provide service. That information includes (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, (2) cell-site data, also known as "tower/face information" or cell tower/sector records, and (3) timing advance or engineering data commonly referred to as per call measurement data (RTT, True Call, LDBoR, or equivalent). E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone

connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

101. To facilitate execution of this warrant, law enforcement may use an investigative device or devices (sometimes referred to as a Cell Site Simulator or Wi-Fi geolocation device) capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from nearby cellular devices, including the Target Cellular Device. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Device and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

102. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law

enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

103.    I request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the target cellular device would seriously jeopardize the ongoing investigation. Such disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is a reasonable necessity for the use of the techniques described. *See* 18 U.S.C. § 3103a(b)(2). As further specified in the attachment, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is a reasonable necessity for that seizure. *See* 18 U.S.C. § 3103a(b)(2).

104.    I further request the following information from the service provider: the installation and use of a pen register trap and trace device, all real-time precision location information, including E-911 Phase II data, GPS data, and latitude-longitude data, real time cell

site information, and per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent) beginning 30 days from the date the warrant is issued.

105. I further request call detail records and data reports (voice, SMS, MMS), including cell site location information, originating and destination IP addresses, per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent) for the past 30 days.

106. I further request subscriber and extended subscriber information, handset identifiers, handset make and model, Wi-Fi MAC address, and account notes and memos for the target device.

107. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the target cellular device outside of daytime hours.

108. I further request that the pen register / trap and trace device be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

109. I further request that the Court order all documents in support of this application, including the affidavit and search warrant, be sealed until further order by the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because

their premature disclosure may seriously jeopardize the investigation. I further request that the Court order any service provider, or their representatives, not to disclose the existence of this warrant or investigation unless ordered to do so by the Court.

110.    A search warrant may not be legally necessary to authorize all of the investigative techniques described. Nevertheless, I submit this warrant application out of an abundance of caution.

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the following cellular devices:

- **(262) 270-9882 (Target Device 1)**, whose service provider is T-Mobile, a wireless telephone service provider headquartered in Parsippany, New Jersey.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: Target Device users is the person to whom the pen register or trap and trace device is to be attached/applied and who is the subject of the criminal investigation; (262) 270-9882 (Target Device 1, T-Mobile) is the phone number to which the device is to be attached; and Title U.S.C. § Statute  is the offense, or one of the offenses, to which information relates; and

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Bureau of Alcohol, Tobacco, Firearms and Explosives.

**ATTACHMENT B**

**Particular Things to Be Seized**
**with a Cell Site Simulator or Wi-Fi Geolocation Device**

This Warrant authorizes the officers to whom it is directed to determine the location of the target cellular device by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to signals sent to it by the officers;

for a period of thirty (30) days, during all times of day and night. This includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the Bureau of Alcohol, Tobacco, Firearms and Explosives. Because the use of the device, a Cell Site Simulator or Wi-Fi geolocation device, may fall within the definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

This warrant does not authorize the interception of any content (telephone, text message, or internet based). The investigative device may interrupt cellular service of phones or other

cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

Under this warrant, the cell site simulator / geolocation device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

The Court finds reasonable necessity for use of the techniques and collection of information described. *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2).

**ATTACHMENT B**

**Particular Things to Be Seized**

**from Device Service Provider**

1.      Information about the target cell phone and its location, later referred to collectively as location information, includes all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent), and real time cell site information for 30 days beginning from the date the warrant was issued.  This includes initiating a signal to determine the location of the target cell phone on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123-3124 by the service provider and the Bureau of Alcohol, Tobacco, Firearms and Explosives. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41.  The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

2.      All subscriber and extended subscriber information, handset identifiers, handset make and model, WI-FI MAC address, and account notes and memos pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

3.       Call detail records and data reports with cell site location information for voice, SMS, MMS, and data connections, originating and destination IP addresses, and per call measurement or timing advance data (RTT, True Call, LDBoR, or equivalent) for July 17, 2024 to PRESENT pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

4.       To the extent that the information described is within the possession, custody, or control of the service provider, the service provider is required to disclose all location information to the government and provide all technical assistance necessary to accomplish the collection of the location information unobtrusively and with as little interference as possible.

5.       This pen register / trap and trace device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

6.       The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or representative who gains access to the information in this warrant shall not disclose the existence of the warrant, order, or investigation to any third party unless ordered to do so by the Court. Additionally, the agency requests that all court orders and supporting documents, including the affidavit and search warrant, be sealed until further order by the Court.

7.       This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2).

2